Cedric K. McGRIFF, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 130, 2000.

Supreme Court of Delaware.

Submitted: June 20, 2001.
Decided: Sept. 7, 2001.

Bernard J. O'Donnell, Assistant Public Defender, Office of Public Defender, Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Deputy Attorney General, Department of Justice, Wilmington, Delaware, for appellee.

Before: VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices, constituting the Court En Banc.

WALSH, J.

In this appeal, we consider whether the Superior Court erred in admitting hearsay testimony regarding a child victim's statements of sexual abuse pursuant to 11 *Del.C.* § 3513. The appellant, Cedric K. McGriff ("McGriff"), contends that the admission of the hearsay statements violated his constitutional right of confrontation. McGriff further contends that the trial court improperly found that the child victim was unavailable as required by 11 *Del.C.* § 3513. We conclude that the admission of the hearsay testimony of State witnesses regarding the child's accounts of sexual abuse by McGriff did not violate his constitutional rights under the Federal or State Confrontation Clauses and that the Superior Court's determination of unavailability is supported by the record. Accordingly, we affirm.

I

The facts of this case are more fully set forth in this Court's decision reversing McGriff's prior conviction. *See McGriff v. State,* Del.Supr., 672 A.2d 1027 (1996)

("*McGriff I* "). The salient facts are as follows. In 1992, McGriff was indicted on charges of Unlawful Sexual Intercourse First Degree and Unlawful Sexual Contact Second Degree. The alleged victim was McGriff's five year-old daughter (the "Child"), who at the time was a special education student with an I.Q. of 55. The indictments stemmed from statements that the Child made to school officials during a six-month period. These statements indicated that McGriff was sexually abusing the Child. Following a jury trial that took place in 1994, McGriff was convicted and sentenced to life imprisonment.

At McGriff's initial trial, the Child was called as a prosecution witness, but was declared unavailable pursuant to 11 *Del.C.* § 3513(b)(2)a.3. & 4. after the prosecution and trial judge were unable to elicit testimony from her regarding the abuse or her statements pertaining to the abuse. The prosecution then admitted the statements made by the Child through other State witnesses. On appeal, this Court overturned that conviction. *See McGriff,* 672 A.2d 1027. We concluded that McGriff's constitutional right of confrontation was violated because the Superior Court determined that the Child was unavailable to testify, after the Child had given limited testimony before the jury during the State's direct examination, without the court affording McGriff the opportunity to cross-examine the Child. *See id.* at 1030.

On remand, a pretrial hearing was held to determine whether the Child was unavailable to testify as required by 11 *Del.C.* § 3513. At the time this hearing was conducted, the Child was 10 years old. During the hearing, the prosecutor, defense counsel, and trial judge questioned the Child about the alleged incidents of abuse and her prior statements of abuse. Generally, the Child responded only to questions unrelated to the case, tangential matters

such as her grade level, activities in school, and likes and dislikes. When asked about the abuse that had occurred or the statements she made to school officials, the Child was reluctant to testify and professed not to remember what had happened or what she had said. Despite extensive questioning from the prosecutor, defense counsel, and the trial judge—including requests by the court that the Child answer the questions posed to her—the Child refused to cooperate, eventually becoming upset and totally non-responsive.

The Child was subsequently excused, the parties having agreed that further questioning at that time would be useless. After hearing argument from the parties, the Superior Court determined that the Child was unavailable pursuant to 11 *Del.C.* § 3513(b)(2)a.4. because of her "persistent refusal to testify despite judicial requests to do so." The Child's statements pertaining to the sexual abuse by her father were admitted at trial through the school officials to whom the Child had made the statements. McGriff was again found guilty on all counts. This appeal followed.

## II

■■■ The trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *See Feleke v. State,* Del.Supr., 620 A.2d 222, 225 (1993). Whether McGriff's constitutional rights were infringed raises a question of law that this Court reviews *de novo. See Thomas v. State,* Del.Supr., 725 A.2d 424, 427 (1999).

McGriff argues that his right to confront the witnesses against him under the Sixth Amendment of the United States Constitution and Article I, § 7 of the Delaware Constitution was infringed. McGriff asserts that he should have been permitted to cross-examine the Child in front of the jury during trial and not being afforded the opportunity to do so violated his constitutional right to confront his accuser "face to face" as the Delaware Constitution provides. McGriff further contends that the trial court's finding of unavailability was not supported by the record. McGriff asserts that even though the Child may have been a difficult witness at trial because of her reluctance to testify, it does not follow that the trial court was required to find her unavailable. The State responds that the record supports the trial court's finding of unavailability and that the application of the statute did not violate McGriff's constitutional rights.

## III

■■■ Pursuant to 11 *Del.C.* § 3513, Delaware's "tender years" statute, a child [1] victim's prior out-of-court statements pertaining to instances of physical or sexual abuse may be admitted even though the child does not testify and is not available for cross-examination. This exception to the general prohibition against the admission of hearsay statements [2] may be applied even where the child witness does not testify if: (i) the child is declared unavailable, and (ii) the out-of-court statements are found to possess particularized guarantees of trustworthiness. [3] *See* 11 *Del.C.* § 3513(b)(2)a. & b.

---

**1.** For this exception to apply, the child witness must be "under 11 years of age at the time of the proceeding." 11 *Del.C.* § 3513(a).

**2.** See D.R.E. 802, stating that: "Hearsay is not admissible except as provided by law or by these Rules."

**3.** The Superior Court's previous finding that the Child's statements possessed particularized guarantees of trustworthiness in satisfaction of the statutory requirements is not an issue on this appeal.

McGriff asserts that the Delaware Constitution guarantees a criminal defendant the right to "face to face" confrontation, which he claims he was impermissibly denied by operation of the statute. Specifically, McGriff contends that "face to face" confrontation is required where the disputed testimony does not fall within a firmly rooted exception to the general prohibition against the admission of hearsay testimony. McGriff also contends that a finding of unavailability is required where, as here, the out-of-court statements are not admitted pursuant to a firmly rooted exception to the hearsay rule. McGriff further asserts that Article I, § 7 of the Delaware Constitution should be interpreted in this case to require the child to be cross-examined in front of the jury so that the jury can judge the witness' demeanor during questioning in the defendant's presence.

■■■ Both the Sixth Amendment of the United States Constitution and Article I, § 7 of the Delaware Constitution afford defendants in criminal proceedings the right to confront the witnesses who testify against them.[4] U.S. Const. amend. VI; Del. Const. art. I, § 7. The right of confrontation affords an accused the opportunity to subject witnesses offering adverse testimony to the rigors of cross-examination, the " 'greatest legal engine ever invented for the discovery of truth.' " *California v. Green,* 399 U.S. 149, 158, 90 S.Ct.

1930, 26 L.Ed.2d 489 (1970) (footnote and citation omitted). Obviously, whenever hearsay testimony is admitted it infringes upon a defendant's ability to test veracity through cross-examination. *See Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a defendant in a criminal case by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."). Accordingly, hearsay statements admitted against a defendant must meet not only the requirements of an exception to the general prohibition against hearsay testimony,[5] but also the requirements of the Confrontation Clause.

■■■ The Supreme Court has determined that Sixth Amendment standards may be satisfied where the hearsay statements are found to possess some *indicium* of reliability. *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The "reliability" analysis has developed into a general framework for determining whether the standards of the Confrontation Clause are satisfied where hearsay testimony is received against the accused in a criminal case. *See Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). To satisfy the Confrontation Clause, it must be demonstrated that: "(1) 'the evidence falls within

---

4. The United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. The analogous provision of the Delaware Constitution provides that "[i]n all criminal prosecutions, the accused hath a right ... to meet the witnesses in their examination face to face...." Del. Const. art. I, § 7. The Confrontation Clause in the Sixth Amendment is applicable to the states by virtue of the Fourteenth Amendment. *See Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The rights provided

by the Federal Constitution represent the minimal amount of protection that may be afforded and states are free to provide more protections.

5. *See Gannon v. State,* Del.Supr., 704 A.2d 272, 275 (1998) ("The courts in the United States, as in England, have adopted the general rule that hearsay evidence is inadmissible."). As previously noted, exceptions to the hearsay rule are only admissible as provided by law or the rules of evidence. *See* D.R.E. 802.

a firmly rooted hearsay exception' or (2) it contains 'particularized guarantees of trustworthiness' such that adversarial testing would be expected to add little, if anything, to the statements' reliability." *Lilly v. Virginia*, 527 U.S. 116, 125, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (plurality opinion) (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)); *see also Capano v. State*, Del. Supr., 781 A.2d 556, 626–27, (2001). Moreover, for Sixth Amendment purposes, there is no general requirement that the prosecutor demonstrate the unavailability of the declarant, *see United States v. Inadi*, 475 U.S. 387, 392, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), except where "the challenged out-of-court statements were made in the course of a prior judicial proceeding." *White v. Illinois*, 502 U.S. 346, 354, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).[6]

Because 11 *Del.C.* § 3513 mandates a finding that the out-of-court statements "possess particularized guarantees of trustworthiness" before such statements may be admitted at trial, we have previously decided that § 3513 is facially valid under the standards for admissibility pursuant to both the State and Federal Confrontation Clauses. *See Thomas*, 725 A.2d at 426 ("[T]he statute's requirement of a judicial determination of particularized guarantees of trustworthiness renders it not violative of the Confrontation Clause of the United States Constitution or the Delaware Constitution."). McGriff contends, however, that Article I, § 7 of the Delaware Constitution should be interpreted to provide more protection than its federal counterpart. McGriff bases this argument on language found in Article I, § 7 that provides the accused with the right to confront "witnesses in their examination *face to face....* " Del. Const. art. I, § 7 (emphasis supplied). McGriff argues that, where hearsay testimony does not fall within a firmly rooted hearsay exception, the Delaware Constitution requires "face to face" confrontation. In *Gannon v. State*, Del.Supr., 704 A.2d 272 (1998), we expressly left for another day the interpretation to be accorded the phrase "face to face." After examining the evolution of the Federal Confrontation Clause and the history of this State's Confrontation Clause, we now construe the meaning of the phrase "face to face," in the context of McGriff's argument.

■ The concept of a physical or "face to face" meeting between the declarant and the defendant is not unique to Delaware law. The Sixth Amendment Confrontation Clause protects the right of the accused to a "face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The clause has been interpreted to express a preference for the in-court testimony of witnesses. *See Ohio v. Roberts*, 448 U.S. at 63–64, 100 S.Ct. 2531 ("[T]he Confrontation Clause reflects a preference for face-to-face confrontation at trial ... and a primary interest secured by [the Confrontation Clause] is the right of cross-examination.") (citations and internal quotations omitted). The right to "face to face" confrontation under the Federal Constitution is not absolute, however. *See Maryland v. Craig*, 497 U.S. at 846, 110 S.Ct. 3157 ("We have never held ... that the Confrontation Clause guarantees criminal defendants the absolute right to a face-to-face meeting with witnesses against them at trial.").

**6.** We recognized in *Thomas* that "[p]resently, for Confrontation Clause purposes, unavailability is clearly required only where the out-of-court statement was made in the course of a prior judicial proceeding." *Thomas v. State*, Del.Supr., 725 A.2d 424, 428 (1999).

In *Maryland v. Craig,* the Supreme Court considered the constitutionality of a Maryland statute that permitted a child victim of sexual abuse to testify in a room separated from the defendant with only the prosecutor and defense counsel present with the child. *See* Md.Code Ann., Cts. & Jud.Proc. § 9–102(a)(1)(ii) (1989). During trial, the defendant, along with the judge and jury, remained in the courtroom where the child's testimony was viewed through closed-circuit television. During the examination of the child, the defendant was able to electronically communicate with defense counsel. Prior to trial, the trial judge determined, as demanded by the statute, that requiring the child to testify in court will cause "serious emotional distress such that the child cannot reasonably communicate." The defendant contended on appeal that the statute impermissibly violated her confrontation rights. The Supreme Court disagreed, concluding that the right to "face to face" confrontation is not absolute and must yield where it is necessary to further an important public policy and where the reliability of the testimony is otherwise assured. *See id.* at 847–48, 850, 110 S.Ct. 3157. The Court recognized that the preference for "face to face" confrontation at trial " 'must occasionally give way to considerations of public policy and the necessities of the case.' " *Id.* at 849, 110 S.Ct. 3157 (quoting *Mattox v. United States,* 156 U.S. 237, 244, 15 S.Ct. 337, 39 L.Ed. 409 (1895)); *see also id.* at 849–50, 110 S.Ct. 3157 (recognizing the importance of "face to face" confrontation but nevertheless holding that such a right is not an "indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers"). As a plurality of the Supreme Court stated in *Lilly,* the reliability of testimony is otherwise assured when the evidence falls within a firmly rooted hearsay exception or possesses particularized guarantees of trustworthiness. *See Lilly v. Virginia,* 527 U.S. at 125, 119 S.Ct. 1887.

We are of the view that the sections of Delaware's tender years statute at issue in McGriff's case satisfy the "face to face" confrontation requirement of Article I, § 7 of the Delaware Constitution. Although the Delaware Constitution defines confrontation as the right of a defendant to meet the witnesses "face to face," the right of confrontation necessarily implies some sort of "face to face" meeting. Indeed, the term confrontation has been defined as "bringing face to face of an accused person and his accusing witnesses." Webster's New International Dictionary 477 (3d ed.1986).

Other jurisdictions applying state constitutional confrontation provisions requiring "face to face" meeting have reached differing results. Some have opted for a literal application, particularly where a videotaped interview was admitted in lieu of direct testimony of a child, *see State v. Apilando,* Haw.Supr., 79 Hawai'i 128, 900 P.2d 135 (1995), or where a child was permitted to testify from a separate room outside the presence of the defendant. *See Commonwealth v. Ludwig,* Pa.Supr., 527 Pa. 472, 594 A.2d 281 (1991). These decisions reject the U.S. Supreme Court approval of such practices under the Federal Confrontation Clause, *see Maryland v. Craig,* 497 U.S. at 844, 110 S.Ct. 3157, because they effectively denied the right of cross-examination, deemed essential to the confrontation entitlement.[7]

The Delaware tender years statute, as construed in *McGriff I,* does afford the

---

**7.** 11 *Del.C.* § 3511 also permits the use of videotaped testimony in lieu of live testimony by an available witness under the age of 12 years, but the constitutionality of the statute is not before us.

right of "face to face" cross-examination at the hearing conducted by the trial court pursuant to 11 *Del.C.* § 3513. At that hearing the child may be deemed "unavailable" on certain enumerated grounds but the Court must also conclude that the "child's out-of-court statement is shown to possess particularized guarantees of trustworthiness." 11 *Del.C.* § 3513(b)(2)b.

The Supreme Court of Indiana in *Pierce v. State*, 677 N.E.2d 39 (1997), upheld the constitutionality of that State's "protected persons" statute which also permits admission of out-of-court statements of child witnesses following a hearing to determine both the child's "unavailability" and the reliability of the statements offered. The Court ruled that because the child was available for cross-examination at the "unavailability" hearing, held out of the presence of the jury, the defendant's confrontation right was satisfied under the Indiana constitution which, like Delaware's, confers a right to "meet the witness face to face." In ruling that the right of confrontation under the Indiana constitution was "not absolute," the Court noted that: "[t]he quest for truth sometimes requires admitting statements from witnesses unavailable for various reasons—death and incompetence among them." *Id.* at 50. This Court reached a same conclusion in *Gannon* with regard to the Delaware Constitution. *See Gannon v. State*, Del.Supr., 704 A.2d 272, 278 (1998) (holding that statements that qualify as a firmly rooted exception to the hearsay rule are admissible into evidence without a demonstration that the declarant is unavailable for federal confrontation clause purposes).

■■ The ruling in *Pierce* strikes the appropriate balance under a "face to face" constitutional standard because it safeguards the right of cross-examination while accommodating the need to spare small children the emotional trauma some-

times associated with the trial process. Similarly, we conclude that the Delaware tender years statute satisfies the "face to face" requirement of the Delaware Constitution through its protection of the right of "face to face" cross-examination on both the issue of the child's availability and the subsequent determination of trustworthiness of the proffered out-of-court statements.

■■ Furthermore, as we pointed out in *Gannon*, certain hearsay exceptions existed at the time the current language of the Delaware Constitution was adopted. *See Gannon*, 704 A.2d at 278 (noting that the excited utterance exception to the hearsay rule was recognized prior to the adoption of Article I, § 7). In addition, this Court recently recognized the constitutionality of admitting statements of a declarant's then existing state of mind, emotion, sensation, or physical condition under the Federal and State Confrontation Clauses. *See Forrest v. State*, Del.Supr., 721 A.2d 1271, 1276–77 (1999); *see also Capano v. State*, at 615–17. It would be incongruent to interpret this provision as an absolute requirement of in court, physical "face to face" confrontation in all circumstances. A strict reading of the phrase "face to face" would virtually foreclose the State's ability to admit hearsay testimony against a criminal defendant, including those statements determined to be particularly trustworthy, substantially eliminating many exceptions to the rule prohibiting hearsay testimony. As with the Federal Confrontation Clause, a literal reading of the Delaware Confrontation Clause would "abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Ohio v. Roberts*, 448 U.S. at 63, 100 S.Ct. 2531. The right to meet witnesses "face to face" is not mandatory in all circumstances; rather, Article I, § 7 expresses a prefer-

ence for "face to face" confrontation in accordance with the law of the land—due process. *Gannon*, 704 A.2d 272. That preference must yield in those hearsay situations that are consistent with due process: firmly rooted exceptions and hearsay statements that have particularized guarantees of trustworthiness.

The State has an interest in protecting young children from testifying. In addition, the State has an interest in prosecuting individuals in cases of sexual and physical abuse involving children, cases that can be very difficult to prosecute. *See Wheat v. State*, Del.Supr., 527 A.2d 269 (1987). Often, children are reluctant to testify in court. *See* Sharon P. Brustein, *Coy v. Iowa: Should Children Be Heard and Not Seen?*, 50 U.Pitt.L.Rev. 1187, 1191 (1989); *see also State v. Sheppard*, N.J.Supr., 197 N.J.Super. 411, 484 A.2d 1330, 1333 (1984). This may be due to a fear of the defendant or even the child's belief that he or she was somehow at fault. In other cases, as here, the child blocks the incident or incidents from her mind and is unable to recall what occurred or may refuse to do so in the presence of the offender. Frequently, the child victim is the only witness to the event. In these situations, it is crucial to the proper administration of justice that the child's out-of-court statements regarding the incidents of sexual or physical abuse be admitted. *See generally*, Robert G. Marks, Note, *Should We Believe the People Who Believe the Children? The Need for a New Sexual Abuse Tender Years Hearsay Exception Statute*, 32 Harv.J. On Legis. 207 (1995).

■■■■ Of course, defendants in criminal cases have a significant constitutional right in ensuring that the testimony admitted against them is reliable. The right of confrontation aids the accused in this regard, forcing adverse witnesses to appear in court and be subject to cross-examination. Where this right must yield because of public policy interests, countervailing measures must be in place to ensure the statements' reliability, *i.e.*, the statements must be admitted pursuant to a firmly rooted exception to the hearsay rule (in which case the reliability of the statement is inferred), or must be found to possess particularized guarantees of trustworthiness. *See Lilly v. Virginia*, 527 U.S. at 125, 119 S.Ct. 1887; *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. 2531. The purpose of the Confrontation Clause is upheld if the testimony at issue is found to carry the indicia of reliability. Delaware's "tender years" statute meets that standard and does not offend the Federal and State Constitutional protections.

### IV

We next consider McGriff's contention that, even if the "tender years" statute is constitutional, the Superior Court's finding of unavailability was not supported by the record. A specific finding of unavailability must be made by the trial court. The statute provides that a child witness may be declared unavailable on any of the following grounds:

1. The child's death;

2. The child's absence from the jurisdiction;

3. The child's total failure of memory;

4. The child's persistent refusal to testify despite judicial requests to do so;

5. The child's physical or mental disability;

6. The existence of a privilege involving the child;

7. The child's incompetency, including the child's inability to communicate about the offense because of fear or a similar reason; or

8. Substantial likelihood that the child would suffer severe emotional trauma from testifying at the proceeding or by means of a videotaped deposition or closed-circuit television;

11 *Del.C.* § 3513(b)(2)a.

As the statute makes clear, a child witness may be declared unavailable where the child persistently refuses "to testify despite judicial requests to do so," the basis upon which the Superior Court declared the Child unavailable in this case. At the pretrial hearing, the prosecutor, defense counsel, and the trial judge attempted to elicit testimony from the Child regarding McGriff's sexual abuse of her and the statements she made to school officials relating to that abuse. In spite of numerous requests by the trial judge throughout the hearing that the Child answer questions posed to her, the Child for the most part remained non-responsive.

During direct examination, the Child readily answered some questions posed to her. These questions mostly dealt with extraneous matters, however. The Child was generally non-responsive when asked about the incidents of abuse or the statements she made to school officials. Indeed, when questioning shifted to the abuse and the statements she made pertaining thereto, the Child became extremely reserved and claimed no memory of what had occurred or what she had told her teachers.

On cross-examination, the Child did state that she remembered McGriff hurting her during a time when she was living in a motel with her mother. After eliciting this response, however, defense counsel ceased questioning. On redirect, the prosecutor attempted to question the Child further about what occurred during that time. The Child, however, retreated back into herself, offering monosyllabic answers to the questions posed to her and eventually stating "I hate—I don't want to do this no more.... I don't want to stay here." Despite repeated requests from the trial judge, the Child refused to answer the prosecutor's questions. The trial judge then attempted to elicit testimony from the Child. The witness, however, remained non-responsive and refused to answer the trial judge's questions.[8] Having failed to elicit any meaningful testimony from the witness, the trial judge finally excused the Child.

The record demonstrates that the trial judge requested the Child to answer questions regarding the abuse or her prior statements pertaining to the abuse. Notwithstanding these requests, the Child declined to cooperate. In effect, the Child was "blocking" the incidents of abuse, refusing to recall or communicate about them. Moreover, at the end of the hearing the Child became visibly upset and totally non-responsive.

■■■ The trial judge who conducted the examination was in a unique position to determine whether further efforts to force the child to testify would be productive or

---

8. For example, the following exchange between the trial judge and the Child illustrates the Child's refusal to testify:

The Court: [Y]ou don't want to talk to [the prosecutor]?
The Witness: (Witness nods head).
The Court: Can you tell me why? ... Tell me why don't you want to talk to her.
The Witness: I don't want to say it no more.
....

The Court: Tell me what happened.
The Witness: (No response).
The Court: Will you tell me?
The Witness: (No response).
The Court: ... Do you remember the things you told the lady that happened to you?
The Witness: Yes.
The Court: Will you tell me?
The Witness: (No response).

harmful to the child. The trial judge is accorded a wide degree of discretion in dealing with this sensitive process. We conclude that the trial judge did not abuse his discretion in determining that the Child was unavailable to testify pursuant to 11 *Del.C.* § 3513(b)(2)a.4. There is no contention in this appeal that the statements did not possess particularized guarantees of trustworthiness.

## V

We conclude that the requirements of 11 *Del.C.* § 3513 satisfy the Federal and State Constitutions and that the Superior Court's determination of unavailability pursuant to the statute was amply supported by the record.

For the foregoing reasons, the decision of the Superior Court is Affirmed.